## DECLARATION of CHRISTOPHER M. LUH

I, Christopher M. Luh, do hereby declare:

### BACKGROUND/EXPERIENCE

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been employed in this capacity since 2008. Prior to the FBI, I was a Police Officer with the Austin, Texas, Police Department. I am currently assigned to the Inter-Agency Narcotics Enforcement Team (INET). I have received training in the investigation of money laundering violations 18 U.S.C. §§ 1956 and 1957, as well as controlled substance violations 21 U.S.C. § 841.

### PURPOSE OF THIS DECLARATION

2. This declaration is offered in support of a complaint *in rem* seeking forfeiture of Lane County Tax Lot 18-03-21-00-5400, commonly known as real property located at 32683 Hidden Meadows Drive, Eugene, OR, which was purchased in whole or in part with proceeds derived from the sale of a controlled substance and money laundering and, as such, is subject to forfeiture pursuant to 18 U.S.C § 981(a)(1)(A). Additionally, the property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) as real property which was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of 21 U.S.C. § 841(a)(l).

3. The information contained in this declaration is information known to me from my training and experience, by personal knowledge, and by written and oral reports of other law enforcement officers involved in the investigation. Since this declaration is being submitted for the limited purpose of a complaint *in rem* for forfeiture, I have not included each and every fact known to me concerning this investigation but only information sufficient to show probable

**Declaration of Christopher M. Luh**                                                          EXHIBIT A  PAGE 1

cause that the property in question is subject to seizure and forfeiture. This declaration involves an investigation by the INET and the FBI into an individual named Eric L. Scully, who purchased the above described property from William and Rebecca McAlexander on or about October 18, 2012.

**Applicable Law**

4. 21 U.S.C. § 841(a)(1) provides in part:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance [marijuana].

5. 21 U.S.C. § 881(a) provides, in part:

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

    a. 21 U.S.C. § 841(a)(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

    b. 21 U.S.C. § 841(a)(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

6. Within ORS 475.304 are rules governing marijuana Grow Sites. Section 4 requires that a marijuana grow site registration card must be obtained and be posted for whom marijuana is being produced. ORS 475.304 section 7 sets parameters for allowable expenses that may be reimbursed. Specifically, a registry card holder or designated primary caregiver may reimburse the person responsible for marijuana grow site for the costs of supplies and utilities associated with the production of marijuana. No other costs associated with the production of marijuana for the registry identification card holder (patient), including the cost of labor, may be reimbursed.

## SUMMARY OF THE INVESTIGATION

7. In April 2013, INET received information from a source who wished to remain anonymous. The tip reported that the owner of Blac Sheep Coffee, a coffee kiosk located at 795 W. 6th Avenue, Eugene, OR, identified by law enforcement as Eric L. Scully, had two to three warehouse marijuana grow sites that net him about fifty pounds per nine week cycle. The tip further states that Scully sells the marijuana at $2,000 per pound and the coffee stand is not open on a regular basis. The tip reported that Blac Sheep Coffee was a financial front for laundering illegal drug proceeds.

8. INET Detective Keith Seanor conducted an investigation concerning Eric Scully and the illegal production and sale of marijuana. On January 6, 2015, Detective Seanor obtained a search warrant for three locations associated with Eric Scully and the marijuana grow operation: 32683 Hidden Meadows Drive, Eugene, OR; 74920 Conifer Court, Cottage Grove, OR; and 2600 Main Street, Springfield, OR.

9. On January 7, 2015, the three search warrants were executed. Following is a summary of observations and items seized at each location.

**Declaration of Christopher M. Luh**                                    EXHIBIT A  PAGE 3

**32683 Hidden Meadows, Eugene, OR**

10. Eric Scully, Joan Scully and Krystin Livingston were present at the residence. Several large black plastic bags full of marijuana were located in a downstairs bedroom. Numerous items used for packaging and shipping marijuana, including cardboard boxes, shipping labels, vacuum sealers and latex gloves were located in a downstairs media room. A marijuana grow operation, including marijuana plants and a separate drying room, were located in a storage building next to the residence. Approximately 194.5 pounds of marijuana and 85 marijuana plants were seized. Two custom motorcycles and several high end watches that have a retail value of over $125,000 were also seized. A handwritten note was found at the residence which stated, in part, "750 pounds every 8 weeks sold @ 2560 = $1,920,000."

11. A United States Postal Service shipping box was located in the media room. A shipping label on the was addressed to an individual in Tucson, Arizona, and the return address was listed as, "Linda R. Baker, Wholelife Natural B&B, 3680 W 1st Ave., Eugene, OR 97402." The weight of the box was listed as 17.2 pounds. The delivery date was listed as January 8, 2015, indicating that the box was to be mailed that day in order to arrive in Tucson the next day. I determined that 3680 W 1st Ave. is a fictitious address and I could find no record of Linda R. Baker or Wholelife Natural B&B in Eugene, OR. Based on the location of the processed marijuana and the shipping box and labels in the residence, I believe that this is the fictitious business that was used to ship the marijuana to out-of-state customers.

**74920 Conifer Court, Cottage Grove, OR**

12. No one was present at the residence at the time the search warrant was served. Items seized included $179,860 in U.S. Currency which was located in a Louis Vuitton handbag, three rifles including an AK-47 assault rifle, seven handguns, and a ballistic protection vest.

**Declaration of Christopher M. Luh**                                   EXHIBIT A  PAGE 4

**2600 Main Street, Units H-1 and H-2, Springfield, OR**

13. Both warehouse storage units contained marijuana grow rooms, marijuana plants, chemicals, nutrients, and other items used in the marijuana manufacturing process. Approximately 134 marijuana plants were seized.

14. INET Detective Curt Newell assisted in the search of the 2600 Main Street warehouse units. While serving the search warrants, an individual identified as Timothy Courter arrived at the location. Detective Newell interviewed Courter.

15. In summary, Courter stated that he was Eric Scully's employee. Eric and his girlfriend, Krystin, live in Cottage Grove. Eric's mother, Joan Scully, lives in a house on Hidden Meadows. There is a marijuana growing operation in the garage at the Hidden Meadows house. The last time he was at the Hidden Meadows location was one week ago. He worked at that location and helped pop the marijuana buds off the plants which he then placed onto screens. Eric and Krystin put the marijuana into the twister and totes. (Detective Newell noted that a twister is a machine used in large commercial marijuana operations to quickly harvest marijuana buds from marijuana plants.) Courter was asked if Eric and Krystin are the main people responsible for the marijuana operation and he stated, "They are the bosses that I answer to." Courter was asked if anyone else works for them and he stated, "Just me and Joan." Courter stated that he works between 20 and 30 hours per week and that he's paid $20 per hour in cash. Detective Newell told Courter that he was seen at the warehouse location with a female and he acknowledged that his girlfriend also works for Eric and Krystin helping to harvest marijuana and is also paid $20 per hour. Courter was asked if he knows about Eric or Krystin shipping marijuana across the country and he said, "I hear them say they gotta get marijuana packaged and shipped out. I don't know where it goes."

**Declaration of Christopher M. Luh**                              EXHIBIT A  PAGE 5

16. A search of Lane County Property Tax records revealed that the property located at 32683 Hidden Meadows Drive, Eugene, OR, is owned by William Scott and Rebecca Sue McAlexander. The 2014 tax statement listed an estimated market value of $703,461.

17. On January 9, 2015, I interviewed Rebecca McAlexander concerning ownership of the Hidden Meadows property. In summary, Ms. Alexander stated that in approximately November 2011, she and her husband entered into a land sale agreement with Eric Scully for the sale of the Hidden Meadows residence. The contract was reviewed by attorney Matt Cox. (Based on a review of the contract, detailed below, the date of the purchase was October, 2012.) Under the terms of the agreement, the McAlexanders would retain title to the property while Scully made monthly payments to Cascade Escrow towards ownership of the property. McAlexander stated that Scully made an initial down payment of $50,000 in 2012 at closing, and an additional payment of $50,000 in 2013. (Based on a review of the contract, detailed below, Scully made an initial down payment of $57,900 in 2012 and an additional payment of $57,900 in 2013.) The McAlexanders received both payments from Cascade. Scully also paid approximately $3,200 per month on the contract. The monthly payments have been made every month. Scully still owes at least $350,000.

18. On January 15, 2015, Detective Seanor contacted attorney Matt Cox and obtained a copy of the Land Sale contract relating to the sale of the Hidden Meadows property to Eric Scully. The contract was dated October 18, 2012 and was signed by Scott McAlexander, Rebecca McAlexander, and Eric Scully. The contract states that the purchase price was $579,000. A first down payment in the amount of $57,900 was due at closing and a second down payment in the amount of $57,900 was due in 12 months. The down payments were in addition to monthly payments in the amount of $3,124.26.

**Declaration of Christopher M. Luh**                                    EXHIBIT A  PAGE 6

19. I have reviewed Detective Seanor's search warrant affidavit and discussed this case with him. Based on information stated in the affidavit and discussions with Detective Seanor and other investigators participating in this investigation, I know that Eric Scully's only source of income is believed to be from the sale of marijuana. I know that Joan Scully retired from the Tucson, Arizona Public School System in May 2014 and receives a pension in the amount of approximately $2,700 per month.

20. In August 2014, Eric Scully purchased a new Toyota Tundra pickup truck from Kendall Ford. He paid approximately $10,000 down and is making payments in the amount of $1,378 per month. In September 2014, Joan Scully purchased a new Tesla automobile for approximately $70,000. The vehicle was financed through Wells Fargo Dealer Services and monthly payments in the amount of approximately $1,600 are paid to Wells Fargo. Eric Scully has been observed driving this vehicle and has been cited for speeding in this vehicle.

21. I have conducted a preliminary financial analysis in order to determine the estimated monthly expenses paid by Eric and/or Joan Scully. Estimated expenses are as follows:

| Expense | Amount |
| --- | --- |
| Hidden Meadows monthly payment | $3,100.00 |
| Hidden Meadows monthly utilities | $2,100.00 |
| Conifer Court monthly payment | $2,400.00 |
| Springfield warehouse monthly payment | $4,000.00 |
| Springfield warehouse monthly utilities | $1,200.00 |
| Tesla monthly payment | $1,600.00 |
| Toyota Tundra monthly payment | $1,378.00 |
| Marijuana trimmers monthly wages | $3,200.00 |
| **Total** | **$18,978.00** |

22. The above listed expenses do not include normal monthly living expenses, including food and entertainment, vehicle gas and maintenance, and do not include other expenses associated with operating a large commercial marijuana grow operation, including chemicals, lights, equipment, and shipping costs. In addition, the monthly expense analysis does not include

**Declaration of Christopher M. Luh**                                EXHIBIT A  PAGE 7

payments for the above described large purchases, including the down payments for the purchase of the Hidden Meadows Drive or Conifer Court residences and the Toyota Tundra pickup, two custom motorcycles, or the purchase of the high end watches seized from the Conifer Ct. residence.

23. Based on Eric Scully's lack of known legitimate income, the relatively small monthly pension received by Joan Scully, and the large marijuana grow operation discovered during the search warrant, I believe that the majority of the proceeds needed to pay the above-listed monthly expenses, including monthly loan payments on the Hidden Meadows Drive and Conifer Court properties, are derived from the illegal manufacture and sale of a controlled substance, marijuana.

## CONCLUSION

24. I know from my training and experience that individuals engaged in the manufacturing, distribution, and sale of controlled substances such as marijuana are often found to possess large quantities of cash, marijuana, and grow equipment.

25. Persons involved in possession, manufacture, or distribution of controlled substances such as marijuana often come into large amounts of unexplained income from their drug dealings and will frequently have expenditures which far exceed their reported legitimate income. They frequently pay in cash, cashier's checks, or money orders for most of their large purchases so as to conceal the source of their illegitimate income.

26. I also know that individuals engaged in the manufacture, distribution, and sale of marijuana will sometimes use a marijuana dispensary and the OR Medical Marijuana Program (OMMP) as cover for their illegal activities. These individuals will often grow and/or possess

more than their allotted amounts of marijuana and offer the excess for sale for profit in violation of the law. They will then use the profits for personal expenditures such as the purchase of vehicles, property, and other items not authorized by OR Revised Statute and the OMMP. Detective Seanor told me that Eric Scully is a medical marijuana patient who is authorized to grow marijuana at 2600 Main St., Unit H-2, Springfield, OR. As a medical marijuana patient, Scully's authorization to grow marijuana is limited to 6 adult plants at the 2600 Main Street location. 32683 Hidden Meadows is not an authorized marijuana grow location.

27. Based on the facts set forth herein, as well as my training and experience, I believe probable cause exists to show that Lane County Tax Lot 18-03-21-00-5400, commonly known as real property located at 32683 Hidden Meadows Drive, Eugene, OR, was purchased in whole or in part with proceeds derived from the sale of a controlled substance and money laundering and, as such, is subject to forfeiture pursuant to 18 U.S.C § 981(a)(1)(A). Additionally, the property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) as real property which was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of 21 U.S.C. § 841(a)(l), and is forfeitable to the United States Government pursuant to provisions set forth under 21 U.S.C., Section 881(a)(7).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 27th day of January 2015.

                              *s/ Christopher M. Luh*
                              Christopher M. Luh
                              Special Agent
                              Federal Bureau of Investigation